## WAIVER OF PROOFS OF LOSS UNDER A POLICY OF FIRE INSURANCE.

[Circuit Court of Wood County.]

IDA STACY V. THE NORWICH UNION FIRE INSURANCE SOCIETY.

Decided, April 25, 1903.

*Fire Insurance—Authority of Local Agent—Statement by, that the Company Denied all Liability—Held to be a Waiver of Proofs of Loss—The Law of Agency—Testimony as to Waiver Should go to the Jury.*

1. The general principle that when a matter is entrusted to an agent he will be regarded as having authority, in the absence of notice to the contrary, to carry the business to its completion, applies to the agent of a fire insurance company, where policies signed in blank arè entrusted to him to be filled out and delivered and the premiums collected, and the policy holder has no notice or knowledge of the location or existence of any other agent of the company.

2. Hence, where such an agent·makes an investigation of a fire, and finds the loss is total and there are no suspicious circumstances, and some time thereafter informs the policy holder that he fears trouble as the company denies all liability, and the policy holder, influenced by this statement, submits no formal notice of the fire or proofs of loss, the company is estopped from claiming that the agent was without authority to act after the occurrence of the fire, or from denying that the statement of the agent was a waiver of written notice and·proofs of loss.

3. And further, under the general principles of agency, if the company denied liability, the agent had authority to communicate that fact to the policy holder.

4. It is error, therefore, to direct a verdict under such circumstances in favor of the company, on the grouund that no formal notice or proofs of loss were submitted; but the evidence as to whether the company had waived these requirements should be submitted to the jury.

HULL, J. (orally) ; PARKER, J., and HAYNES, J., concur.

Error of Court of Common Pleas of Wood County, Ohio.

The parties in this case stand in this court the same as in the court below, the plaintiff in error having been the plaintiff below.

442    CIRCUIT COURT REPORTS—NEW SERIES.

Stacy v. Norwich Union Fire Insurance Society. [Vol. I, N. S.

The action was brought on a fire insurance policy to recover five hundred and seventy-two dollars and thirty cents ($572.30) for the loss by fire of a building which was insured by the defendant in error.

The court below directed a verdict in favor of the defendant upon the ground that no written notice of the loss had been given to to the company as required by the policy, and no formal written proofs of loss made to the company as required, and that there was no evidence tending to show that the company had waived these requirements, and at the close of the plaintiff's testimony, a verdict was directed in favor of the defendant, and judgment entered upon it. Proceedings in error were commenced in this court to reverse that judgment.

The policy contains a condition requiring immediate written notice of the loss to be given to the company and formal written proofs of loss to be made to the company within sixty days after the date of the loss. It is not claimed that any written notice was given to the company or that any written proofs of loss were made; the case turns on the question as to whether these requirements were waived by the company.

It is claimed that the company through its agent denied any liability on the policy; denied generally any liability upon the policy after the fire, not basing its denial and refusal to pay upon the failure to give notice and present written proofs of loss. The law is well settled that if this were true, that such a denial of liability were made, that would amount to a waiver of the requirement of written notice or proof of loss, if the denial of liability was made within such time as the proof of loss was required to be made; the authorities are all one way on that question. It would be idle to make proof of loss after the company had notified the assured that it would not pay; and it is claimed here that the company did deny liability and that therefore this requirement was waived. The plaintiff claims that this denial of liability was communicated to him by E. A. Barton, the agent of the company in Bowling Green, this county, he being the agent of the company at the time and representing it here. The head office of the company and its headquarters are in Norwich, England. The evidence of the plaintiff tends to show that shortly after the fire, Barton told him that the

company denied all liability on the policy, and, in substance, that it would not pay. This, Barton, who was called by the plaintiff, denied, but the evidence of the plaintiff is in the record.

It is contended by the defendant in error that a local agent such as Barton was has no authority to make such a declaration on behalf of the company; that his authority is limited to the issuing of a policy, the insuring of the property, collecting the premiums and giving notice of his acts in that respect to the company, but that after a loss occurs his authority is terminated and ceases, and that the matters that follow then are in the hands of, and under the authority of, other persons and other agents, and therefore it is claimed that a denial of liability made by the agent would not bind the company, and would not amount to a waiver of notice and proofs of loss.

The circumstances of the insurance and the fire, and what occurred as far as the contract is concerned, may be briefly stated. The insured acted entirely through her husband as her agent; he made application to Mr. Barton to insure the property, and according to his testimony, Mr. Barton assured him he would endeavor to place the property in some of the companies he was representing, and stated to him that he represented the Norwich Union Company and others, and thought he could place it with the Norwich company, and Stacy requested him to do so if he could. After that, this policy was written by Mr. Barton. He had in his possession policies signed by the proper officers of the company and it was only necessary for him to fill them in and countersign them. The policy was not delivered to Stacy. Stacy testified he was not certain what company Barton would insure the property in, but when the policy was written, it was to be turned over to him. The policy was written under date of February 9, 1901, and while it was still in the office of Mr. Barton, not having been delivered, on the evening of February 15, 1901, he (Barton) received a telegram from an authorized agent of the company at New York, signed "The Norwich Union Fire Insurance Society," to cancel this policy, the company reserving the right to cancel any policy issued by its agent upon his notifying them of the risk he has taken, though he has authority to issue the policy, and the company would be bound by it until it was in fact canceled, and under the statute of this state it would continue in

444    CIRCUIT COURT REPORTS—NEW SERIES.

Stacy v. Norwich Union Fire Insurance Society. [Vol. I, N. S.

force five days after notice of cancellation was given to the insured.

Barton received this notice about five o'clock in the afternoon of February 15, some six days after the policy was written; he gave no notice to Mr. Stacy of the cancellation, and that night, about midnight, the property was destroyed. Barton saw Mr. Stacy the next day and notified him that the company had canceled the policy and he had returned it to the company. The policy was never delivered to Mr. Stacy and he never saw it, or any part of it, and had no actual notice until after the loss of its contents or any of the conditions, restrictions or requirements contained therein. Barton told Stacy that he would notify the company of the loss. He had already sent in the policy and it was not necessary to telegraph the company as the loss was a total one. Barton first talked with Stacy by telephone the morning after the fire, and Barton asked if there was some one he could interrogate in regard to the loss, and Stacy recommended him to some reputable citizen in the village, and Barton did investigate the loss to some extent before he saw Stacy. A few days or a week after that, Stacy called on Barton again, and according to Stacy's testimony, Barton told him he was afraid there was going to be trouble, that the company denied all liability on the policy, and some few times after that, Stacy saw Barton in regard to the matter and nothing was ever paid upon the policy. Barton testified he had some communication with Mr. Sowards, the general agent or general adjuster of the company, at Cincinnati; he was unable to tell just when this was, but he said that Sowards had written him a letter or told him that the company would not pay; he said this was three or four weeks after the loss, and afterwards he said it might be by letter, and at some place in his testimony he said it was sixty days after, and finally it was shown that Barton was unable to state when Sowards had made this statement to him that the company would not pay. After the sixty days had expired, within which time proofs of loss might be made, Barton received a letter from Sowards in which he said:

"No proof of loss having been received within the time allowed there will, of course, be no possibility of our paying the loss unless it proves that you have by your communications with Mr. Stacy or Mr. Sutton so involved us as to make yourself liable to us for any claim which can be successfully prosecuted."

The weight of authority generally seems to be that a local agent with power to solicit insurance, collect premiums and issue policies, under a policy containing such restrictions and conditions as this one, has not the power to waive proof of loss unless the company has conferred upon the agent additional authority after the loss, or has apparently conferred such authority upon him. I say the weight of authority seems to sustain the proposition that in the absence of anything of this kind, the local agent has no authority to waive such requirements.

There is no case in this state that is decisive on this very question. The tendency of the Supreme Court of this state has been to hold perhaps rather liberally to the doctrine that the agent who has power to issue policies as Barton had, has full authority to represent the company.

In the case of *Machine Co.* v. *Insurance Company,* in 50 Ohio St., page 549, Judge Williams, in discussing the question of a local fire insurance agent, held that such an agent was a general agent of the company. The real question in that case, however, was whether the agent had power to extend time of payment and receive payment for insurance other than cash, so the language of Judge Williams must probably be regarded as dictum, rather than an expression of the Supreme Court that such an agent is a general agent of the company with power to bind it in all matters after the loss, as well as before. In the fourth paragraph of the syllabus the Supreme Court say:

"An agent authorized to make contracts of fire insurance and issue policies, may waive payment in cash of the premiums, and give time for their payment, unless there are restrictions upon his authority of which the insured had notice; and such waiver may be express or implied."

On page 558 of the opinion delivered by Judge Williams this is stated:

"The only other ground upon which it is claimed the defendant is not liable is, that the premium was not paid until after the loss occurred. Murphy was the duly commissioned agent of the defendant, authorized to make contracts of insurance, collect premiums, and issue and renew policies; and to that end, was furnished by the defendant with printed forms of policies, signed in blank

446    CIRCUIT COURT REPORTS—NEW SERIES.

Stacy v. Norwich Union Fire Insurance Society. [Vol. I, N. S.

by the president and secretary of the company to enable him without conference with them to countersign and issue the policies in behalf of the company. It is well settled that such an agent is the general agent of the company, and may, in his dealings with those he insures, waive payment in cash of premiums, and, indeed, any of the conditions of the policy, except when a restriction upon his authority is in some way brought to the knowledge of the insured."

Although this may be dictum, it is sound doctrine in my judgment, and good law. This statement of Judge Williams would go to the extent of holding that such an agent was the general agent of the company in any matter relating to the policy unless there was an express restriction upon his authority in that respect brought to the knowledge of the insured. If it was contained in the policy, the insured would, of course, be bound to know it. The restriction in this policy was in these words:

"And no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, or agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto."

It is, of course, true that the company may confer any authority in the transaction of its business upon any agent that it has, whether a local or general agent, and if it does confer such authority upon the agent, expressly or impliedly, the conduct of the agent would bind the company. If the company treats its agent in such a way after a fire as to hold him out as a person authorized to represent the company in all matters and things coming after the fire, it would not be permitted to say that he had authority to represent the company in some respects in regard to those matters occurring after the fire or necessary to be attended to after a fire, and did not have authority to represent it in other respects. It can not be permitted for the company to confer authority upon its agent to represent it in certain things in regard to the loss after the fire, but, without notice to that effect to claim he had no authority as to receiving notice or proofs of loss. I take it to be a general

rule of law that where the transaction of business is intrusted to an agent by a principal, that in the absence of any notice to the contrary, he has the authority, so far as third parties are concerned, to carry on the business to its completion and do all things necessary for that purpose. In this case, the agent represented the company, and was permitted to represent the company in a manner inconsistent with the claim that he had no authority to do so after the fire in the matter of the loss. That was a fact tending to show that he had authority to represent the company in the matter of receiving notice or proof of loss, or in the matter of denying liability on the part of the company.

It should not be lost sight of that according to this record, at the time this property was insured, and at the time this fire occurred, or at any time before the loss occurred, plaintiff had no notice or knowledge of any agent of this company in the United States, except Mr. Barton. Stacy had never seen the policy; the company had its headquarters on the other side of the Atlantic, at Norwich, England, and when this loss occurred there was no one on earth that Stacy knew that he could go to, except the agent from whom he had procured this policy, and he went to him, and the agent made the statement to him that he would give notice of the loss to the company, and he did proceed to give notice of the loss to the company. The agent asked Stacy whom he could inquire of in regard to the loss, and he gave him the name of a Mr. Watts. Barton communicated with Watts and ascertained the facts, ascertained that the loss was total. Barton wrote to the company and it wrote to him through Mr. Sowards, their agent, who was inclined to censure him, and the whole matter in relation to this loss was left by the company, so far as having anyone in charge on the ground was concerned, to Mr. Barton.

It seems to us that there is evidence in the record strongly tending to show that the company permitted Mr. Barton to represent them in this matter after the loss occurred, and if this were true, we think then he must be held in law to have had authority to do those things that it is claimed he did do, so as to bind the company in the way of waiving notice of loss and proofs of loss; and upon this proposition may be cited the case of *Citizens Ins. Co.* v. *Stoddard,* 64 N. E. Reptr., page 355, a decision of the Supreme Court of Illinois. The court say in the syllabus:

448    CIRCUIT COURT REPORTS—NEW SERIES.

Stacy v. Norwich Union Fire Insurance Society. [Vol. I, N. S.

"In an action on a fire policy it was shown that an alleged agent of the company had received the application and delivered the policy, and that, when he received notice of the loss and forwarded it to the insurer, the latter acknowledged its receipt to him, and asked him to investigate the case, but to do nothing by way of an adjustment. Subsequently not hearing from the adjuster, the insured called on the agent, and he wrote to the insurer, who replied again, asking that he look into the loss. *Held:* That the evidence showed that the alleged agent was the agent of the insurer in the matter of the loss, so that conduct on his part inconsistent with the provision of the policy as to proofs of loss, would be binding on the insurer."

The only defense in this case was that proofs of loss had not been made within thirty days, but had been made in sixty days, the agent having told the insured that sixty days would be soon enough. The court held that in view of the conduct of the agent and what he did for the company after the fire, that he so far represented the company that they could not deny his authority to make this statement. The court say further, at the end of the opinion, that it is unnecessary that such a waiver be written upon the policy. They say:

"The policy provided in substance that no officer, agent or other representative of the company should have power to waive any of the conditions or provisions of the policy, except such waiver should be in writing indorsed upon or attached to the policy. There is nothing in this stipulation which takes it out of the general rule that the provision in a policy of insurance that no waiver shall arise, except out of an agreement endorsed in writing, has reference only to the conditions entering into and forming a part of the contract of insurance, and has no application to those conditions which are to be performed after a loss has occurred."

The court cites 162 Ill., 322; 44 N. E., 746, and 16 Am. & Eng. Enc. Law (2d Ed.), p. 952.

We are of the opinion in this case that there was evidence tending to show that the agent Barton represented the company and was authorized to do so in these matters after the loss, and that upon that feature of the case, it should have been submitted to the jury. If the company permitted him to represent it in the matter after the loss and gave him apparent authority to represent it, the company is estopped from claiming that he did not have authority to

waive proofs of loss, the furnishing of which is one of the steps provided by the policy in collecting the insurance. If Barton, the agent, was given this authority; if he knew the loss was total, as he says he did; if he investigated it and had authority to do so, and found that there were no suspicious circumstances in connection with the fire, he might waive proofs of loss; and if he was given authority by the company to represent them after the loss in matters pertaining to it, and he said to the insured that the company denied all liability, and the insured relied upon that and made no proof of loss and gave no written notice, the company would be estopped from claiming that he had no authority to make such statement. This company, like all others, acts, and must act through agents, and it can make no statement except through an agent. The insured, when his property was destroyed, must find a representative of the company somewhere. The policy provided that he must make and give an immediate written notice of the loss to the company; that did not mean that he should sit down and write a letter and send it to Norwich, England; if he had done that, it would have been held perhaps to be a violation of the terms of the policy, because there was an agent on the ground and it was required of him to give immediate notice to the company. He knew of no agent except this one; he knew of no other officer of this company, so far as the testimony shows, except the agent in Bowling Green.

We think further that there is evidence in this record tending to show that the company did in fact deny its liability. The weight of that testimony was for the jury. Mr. Barton testified in some part of the record that Sowards notified him within three or four weeks after the loss that the company would not pay, Sowards being the general adjuster. In other places Barton says this was later. His testimony is contradictory; but where the testimony of a witness is conflicting, especially where the witness is hostile, if there is some part of his testimony tending to support plaintiff's claim, it raises a question that the plaintiff has a right to have submitted to the jury. The fact that before this policy was delivered, before the fire occurred, it was canceled by the company, so far as they could cancel it, was a circumstance that would be proper to be considered upon the question whether the company denied liability. A jury would have a right to consider that along

450    CIRCUIT COURT REPORTS—NEW SERIES.

Stacy v. Norwich Union Fire Insurance Society. [Vol. I, N. S.

with all the other circumstances in the case, and the letter from Mr. Sowards to Mr. Barton might perhaps be regarded as an admission on the part of the company that Barton had authority to speak for the company, for he says:

"Unless it proves that you by your communications with Mr. Stacy or Mr. Sutton so involved us as to make yourself liable to us for any claim which can be successfully prosecuted."

We hold further that if the company in fact denied liability, the agent had authority to communicate that to the insured, and if he did communicate it to the insured, that that would amount to a denial of liability on the part of the company and work a waiver of written notice and proofs of loss. We find no case upon that point, but it seems to us under the general principle of the law of agency, it must be held that such an agent as this has power to communicate that to the insured and the insured has the right to act upon it.

We are of the opinion further that under the circumstances disclosed by the record in the case, Mr. Barton would be held as far as this company and the insured were concerned, to have the power and the authority of a general agent. No notice was given to Stacy of any restriction of authority on the part of the agent. There is no express statement in the policy that he had no authority to receive notice of and proofs of loss; and where a company whose headquarters are in a foreign country—across the seas—puts in the hands of an agent policies of insurance, signed and countersigned, and ready for execution and delivery, except filling in the name of the party and a description of the property, and no notice is given that there is any other agent on this hemisphere, we think that it must be held as a matter of law, that the company is estopped from denying his authority to represent the company in all matters necessary to the making of a contract of insurance and pertaining to a loss, in case a loss occurred, including the collection and paying of the insurance money. It is not the law that under such circumstances as these, a man is obliged when a loss occurs to start out and hunt for an agent who would have authority to receive notice or proofs of loss. The agent with whom he contracted for his policy of insurance, to whom he was to pay the premium, and who conferred with him after the fire,

was the only agent he knew of that represented this company in this country.

Whatever the general rule may be as to such a local insurance agent not being a general agent of the company, in all matters pertaining to the policy, we think that under these circumstances the company is estopped from denying the authority and power of the agent to represent it in all matters relating to the loss, and the act of the agent Barton was the act of the company and binds it.

It was error for the court to direct a verdict in favor of the defendant, and for that reason, the judgment of the court of common pleas will be reversed, the verdict set aside and the case remanded for a new trial.

*Baldwin & Harrington,* for plaintiff in error.

*James O. Troup,* for defendant in error.